STANDARD LIFE AND ACCIDENT INSURANCE CO., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Standard Life & Acci. Ins. Co. v. Commissioner
Docket No. 4132-71.
United States Tax Court
T.C. Memo 1974-242; 1974 Tax Ct. Memo LEXIS 79; 33 T.C.M. (CCH) 1077; T.C.M. (RIA) 74242; September 18, 1974, Filed. Gene A. Castleberry, for the petitioner. Thomas J. Miller, for the respondent. TIETJENS
MEMORANDUM OPINION
*80 TIETJENS, Judge: The Commissioner determined the following deficiencies in and additions to petitioner's income taxes: Year
Deficiency
Section 6653(a) Additions to Tax 1958
$25,974.93
$1,298.75
1959
90,647.02
4,532.35
1961
34,986.04
1,749.30
The questions for decision are: (1) Whether deferred and uncollected premiums, including loading, and due and unpaid premiums, including loading, must be included in calculating petitioner's assets as defined by section 805; [1] (2) Whether either those premiums or the increase in the loading portions thereof must be included in petitioner's gross underwriting income in determining its gain from operation under section 809; and (3) Whether petitioner may amortize the cost of blocks of cancellable health and accident insurance policies purchased from other insurance companies. [2]
This case was fully *81 stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure. The facts which we deem necessary for decision will be referred to below. Petitioner is, and at all times material hereto has been, a life insurance company as defined in section 801(a), with its home office and principal place of business in Oklahoma City, Oklahoma. Petitioner filed its federal income tax returns (Forms 1120L) for the calendar years 1958, 1959, 1960, and 1961 with the district director of internal revenue at Oklahoma City, Oklahoma. In Bankers Union Life Insurance Co., 62 T.C. [*] (August 21, 1974), we defined certain terms common to the life insurance industry. We rely on those definitions in our discussion of the relevant facts of the instant case. Petitioner is a stock life insurance company organized and existing under the laws of the State of Oklahoma. Its operations and accounts are subject to the supervision and approval of the Insurance Commissioner of the State of Oklahoma and, because it does business in numerous states, it is subject to periodic audit of its accounts by the National Association of Insurance Commissioners (hereafter NAIC) which acts on behalf of the *82 insurance departments of the various states. Petitioner was required by the State of Oklahoma and by the NAIC to compute its reserves on the great majority of its life insurance policies on the assumption that premiums were paid up one year in advance on each anniversary date commencing with the issuance date of the policy, even though premiums were not usually paid in this manner. The reserves so computed were reflected as a liability of petitioner and, as required by the Internal Revenue Code of 1954, as amended by the Life Insurance Company Income Tax Act of 1959, were taken into account in the computations required under sections 805 and 809 on the federal income tax returns filed by petitioner for the taxable years 1958 to 1961, inclusive. The increases and decrease in loading for each of the years involved were as follows: 1958
$ 65,308
1959
301,252
1960
(140,372)
1961
72,139
Relevant deferred and uncollected premiums (including loading) and due and unpaid premiums (including loading) were as follows: Year
Deferred & uncollected premiums
Due and unpaid premiums 1957
$ 621,413
$118,047
1958
834,331
266,323
1959
1,314,987
253,318
1960
1,570,193
232,651
1961
1,572,763
231,969
*83 The NAIC annual statement [3] treats deferred and uncollected premiums on a net basis. On the assets page of the balance sheet, the statement provides space for the entry of "Life Insurance premiums and annuity considerations deferred and uncollected." In detailing the assets, the statement provides for setting forth deferred and uncollected premiums on a net basis and provides for a memorandum account to show the amount of loading excluded from the deferred and uncollected premiums. On the liabilities page of the balance sheet, the statement provides space for the entry of the ""Cost of collection" on premiums and annuity considerations deferred and uncollected in excess of total loading thereon." In conformity with the NAIC annual statement, petitioner's annual statements for 1958, 1959, 1960, and 1961 showed net premiums deferred and uncollected as an asset. Also in conformity with the form, petitioner's annual statement did not show loading as an asset. In the "Summary of Operations" *84 contained in the NAIC annual statement, "Premiums and annuity considerations " includes deferred and uncollected premiums on a gross basis and provides for the inclusion of such premiums at gross to be added to gross premiums collected during the year less deferred and uncollected premiums at gross as of the end of the previous year. In that summary, the "Increase in aggregate reserve for policies and contracts with life contingencies" removes from income the net portion of the deferred and uncollected premiums. Also in that summary, the NAIC statement provides for the deduction of the increase in loading on deferred and uncollected premiums and also for the deduction of cost of collection of premiums in excess of loading on deferred and uncollected premiums. The deduction for increase in loading on deferred and uncollected premiums was claimed by petitioner on its federal income tax returns in determining its net gain from operations. On its income tax return for the taxable year 1958, petitioner did not include any amount for deferred and uncollected premiums and due and unpaid premiums in computing its assets under section 805. On its returns for the years 1959 and 1961, petitioner *85 included in its computation of assets only the net valuation premiums (exclusive of loading) with respect to its deferred and uncollected premiums and due and unpaid premiums. On its returns for 1958, 1959, and 1961, petitioner claimed deductions for the increases in loading in computing its gains from operations under section 809. On October 31, 1957, the petitioner purchased a block of insurance policies from United Founders Life Insurance Company for a net cost of $219,524.21. On April 1, 1958, the petitioner purchased a block of insurance policies from Commonwealth Life Insurance Company at a net cost of $247,098.22. On October 1, 1960, the petitioner purchased a block of insurance policies from Great Western Life Insurance Company at a net cost of $77,280.29. The policies were accident and health and hospitalization policies and were all of the type generally referred to as "cancellable." "Cancellable" does not mean that the company could terminate a policy in midterm, but rather that it could refuse to renew any policy at the end of its stated term, for the policies were renewable at the option of the company. On petitioner's income tax return for the years in issue, *86 petitioner deducted as expenses in the years paid the current costs of the purchases of the blocks of insurance.Because the costs of these blocks of insurance were expensed in the years incurred, the petitioner did not cull and collate records sufficient to show either persistency of individual policyholders, premiums paid, or claims as they pertained to particular blocks of policies. Beginning in 1963, however, the petitioner kept its records by computer and thereby achieved the ready capacity to show premium income received and claims paid by particular blocks of policies, including the three blocks here involved. At the time of the purchase of each block of policies the Annualized Premium in Force (the total amount of premiums which would be received if every policyholder paid the premiums on his policy as they came due during the 12-month period following the date of purchase contract) for each block was as follows: Block
United Founders
Commonwealth
Great Western
Date
10/31/57
4/1/58
10/1/60
APIF
$468,156
$1,036,042
$301,959
From 1963 through 1972 the actual premiums received and claims paid during each year were as follows: Year
United Founders
Commonwealth
Great Western End
Premiums
Claims
Premiums
Claims
Premiums
Claims
1963
39,307
26,719
$37,127
$22,390
$81,358
$ 51,098
1964
35,697
25,948
34,958
24,834
68,580
38,190
1965
26,414
17,854
31,737
17,183
56,923
29,861
1966
20,181
13 ,965
26,168
12,126
43,602
24,180
1967
16,847
8,779
20,612
11,680
29,002
18,216
1968
15,554
10,681
17,759
7,901
22,288
13,431
1969
14,020
10,124
15,775
7,204
17,846
8,320
1970
12,836
10,123
14,095$6,238
15,887
11,741
1971
11,685
9,836
12,114
6,569
13,618
10,024
1972
10,539
5,328
10,860
6,898
12,551
6,544
*87 Petitioner's argument that it need not include in "assets" under section 805 deferred and uncollected premiums and due and unpaid premiums must fail on the authority and reasoning of Bankers Union Life Insurance Co., 62 T.C. [*] (August 21, 1974). Similarly, on that authority and reasoning, we reject petitioner's second contention that some portion or all of those premiums may be excluded or deducted from petitioner's "gain from operations" under section 809. The Commissioner determined that no portion of the cost of acquiring the blocks of cancellable accident and health policies was deductible. The petitioner argues that those costs are amortizable under section 1.167(a)-3 simply because the assets are wasting. On the authority of International Life Insurance Co., 51 T.C. 765, 773 (1969), affd. per curiam 427 F.2d 137 (C.A. 6, 1970), we must reject petitioner's argument and hold for the Commissioner. Petitioner has not convinced us that that case is distinguishable or that it was incorrectly decided. Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, unless otherwise stated. ↩
2. In its brief, petitioner says it is not presenting the issue, raised in its petition, of whether agent's debit balance must be included in assets as defined by section 805. Accordingly, we do not consider it. ↩
3. In its requested findings of fact, petitioner refers to the form it used for its annual statements as the "NAIC annual statement." The Commissioner does not object to that reference. ↩